UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JEFFREY LEWIS, etc., et al.,

Plaintiffs,

-against-

24-cv-8428 (LAK)

CITY OF NEW YORK, et al.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 9/30/2026

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION AND DENYING MOTION TO AMEND**

LEWIS A. KAPLAN, *District Judge.*

This action concerns whether the City of New York subjected plaintiffs and the putative classes they seek to represent to unconstitutional conditions of confinement on Rikers Island, allegedly by depriving them of outdoor exercise, adequate sleeping conditions, and clean, potable water. The matter is before the Court on plaintiffs' motion to certify the following proposed classes and subclasses:

> Class 1: All persons in custody ("PICs") – consisting of both pretrial detainees and convicted persons – housed at the Eric M. Taylor Center on Rikers Island (the "EMTC") from October 26, 2022 to June 18, 2024 (the "Relevant Period"), who were detained for at least 120 consecutive days and denied the opportunity for outdoor recreational time.
>
> > Subclass A: Those who were detained for at least 120 consecutive days after the initial fourteen days of quarantine and still denied the opportunity for outdoor recreational time.
> >
> > Subclass B: Those who were detained for less than 120 consecutive days and denied the opportunity for outdoor recreational time.

Class 2: All PICs housed at the EMTC during the Relevant Period who were provided with a thin, unpadded mattress placed on a metal foundation.

Class 3: All PICs housed at the EMTC during the Relevant Period who were exposed to contaminated water.[1]

***Facts***

The EMTC houses both pretrial detainees and convicted persons sentenced to terms of imprisonment of less than one year within the City of New York.[2] It consists of approximately twenty-nine dorms, each housing approximately sixty-five individuals at a time.[3] Its outdoor recreation yard was closed for repairs during at least the Relevant Period, reopening on June 18, 2024.[4]

Plaintiffs here – Jeffrey Lewis, Michael Farrell, Robert Dinkins, and Luis Sanchez – are four individuals who each were convicted of crimes, sentenced to terms of imprisonment, and held at the EMTC for over 120 consecutive days after the initial fourteen days of quarantine during the Relevant Period.[5] They allege that certain conditions of confinement at the EMTC were

1 Pls.' Mem. Law (Dkt 25) at 3.

2 *Id.*

3 *Id.* at 4.

4 *Id.* at 6; *see* Defs.' Opp'n (Dkt 77) at 4.

5 *See* Caner Decl., Ex. 17 (Dkt 24-17) at 15:25-16:1 (Sanchez detained from August 2023 to July 2024); Caner Decl., Ex. 18 (Dkt 24-18) at 12:7-18 (Farrell detained from April 2023 to January 2024); Caner Decl., Ex. 19 (Dkt 24-19) at 17:1-23 (Dinkins detained from October 5, 2023, to June 3, 2024); Caner Decl., Ex. 22 (Dkt 24-22) at 11:4-12:13 (Lewis detained from August 11, 2023, to March 21, 2024).

unconstitutional. None allegedly received outdoor recreational time during his incarceration.[6] All allegedly sustained some level of injury after being forced to sleep on mattresses that were too thin.[7] And all allegedly sustained some manner of rash, gastrointestinal issues, or both after showering in and drinking the water at the EMTC, which they claim was contaminated.[8]

Accordingly, plaintiffs have asserted claims against the City of New York and the Commissioner of the City of New York Department of Corrections relating to those alleged conditions of confinement under 42 U.S.C. § 1983 for violation of the Eighth and Fourteenth Amendments and pursuant to the New York State Constitution. The matter was stayed while plaintiffs and intervenors – representing, *inter alia*, a putative class of Rikers Island pretrial detainees who allegedly were denied outdoor exercise for at least thirty consecutive days during the Relevant Period – conducted settlement discussions in a separate case in which intervenors are the plaintiffs (and plaintiffs here are the intervenors).[9] This case, however, resumed once those discussions yielded no settlement. The Court subsequently granted intervenors' motion to intervene and set a schedule to complete class certification briefing.

---

6 *See* Caner Decl., Ex. 17 (Dkt 24-17) at 22:2-13, 26:7-23; Caner Decl., Ex. 18 (Dkt 24-18) at 20:9-16, 22:22-23:6; Caner Decl., Ex. 19 (Dkt 24-19) at 24:14-26:9, 38:14-17; Caner Decl., Ex. 20 (Dkt 24-20) at 26:20-27:2, 32:18-20.

7 *See* Caner Decl., Ex. 17 (Dkt 24-17) at 34:7-17; Caner Decl., Ex. 18 (Dkt 24-18) at 17:20-18:13, 24:12-18; Caner Decl., Ex. 19 (Dkt 24-19) at 46:7-16, 48:15-49:4; Caner Decl., Ex. 20 (Dkt 24-20) at 26:20-27:17, 36:5-37:9.

8 *See* Caner Decl., Ex. 17 (Dkt 24-17) at 32:1-12, 41:16-43:21; Caner Decl., Ex. 18 (Dkt 24-18) at 25:25-27:15; Caner Decl., Ex. 19 (Dkt 24-19) at 51:22-54:7; Caner Decl., Ex. 20 (Dkt 24-20) at 26:20-27:2, 41:21-42:14.

9 *Lewis v. City of New York*, No. 23-cv-9460 (DLC) (S.D.N.Y. Oct. 27, 2023).

***Discussion***

Plaintiffs seeking class certification must prove by a preponderance of the evidence that the putative class satisfies the requirements of Rule 23(a) and falls within one of the subsections of Rule 23(b).[10] Rule 23(a) demands that a putative class satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.[11] And Rule 23(b)(3) – under which plaintiffs here seek to certify the proposed classes – requires (1) predominance of common questions over individualized ones and (2) superiority of the class action mechanism for adjudicating the matter. Although most of the dispute in this case centers around adequacy, the Court addresses each requirement of Rules 23(a) and (b)(3) in turn to ensure that any class ultimately certified fully complies with Rule 23.[12]

*I. Numerosity*

Neither intervenors nor defendants dispute numerosity. Correctly so because plaintiffs have identified 257 potential class members, a number that far surpasses a presumptively sufficient showing of at least forty putative class members.[13] Avoiding that level of multiplicity of actions and enabling putative class members who likely would have limited resources and ability

---

10 *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Levitt v. J.P. Morgan Secs., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013).

11 *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023).

12 *See Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).

13 *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

to institute suit on their own would further judicial economy.[14] The numerosity requirement thus is satisfied.

*II. Commonality*

Only defendants dispute commonality. They claim that putative class members lack a common injury because each (i) experienced different prison conditions depending on the then-present levels of COVID-19, (ii) was provided different opportunities for indoor exercise, (iii) encountered different water conditions and experienced different symptoms allegedly from that water, and (iv) had different medical needs with respect to mattress conditions. Defendants' arguments, however, demand too much. Commonality does not require identical claims for relief.[15] It instead is satisfied "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members."[16] And such is the case here where all putative class members allege that defendants subjected them to certain conditions of confinement, that those conditions constituted unconstitutional deprivations, and that defendants were aware of and

---

14 *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

15 *Elisa W.*, 82 F.4th at 123.

16 *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)).

deliberately indifferent to or objectively reckless with respect to those conditions.[17] The commonality requirement thus is satisfied.

### *III. Typicality*

Defendants raise similar objections with respect to typicality – i.e., that the putative classes fail to account for the differing individual circumstances of each plaintiff and putative class member. But those arguments fail to defeat the obvious interrelation between plaintiffs' claims and those of the putative class,[18] all of which allege that "the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class[es] sought to be represented."[19] In such circumstances, "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."[20]

Intervenors for their part argue that plaintiffs are atypical because none of them was a pretrial detainee during the Relevant Period nor was any of them incarcerated for less than 120 consecutive days after the quarantine period. Such an argument, however, more appropriately is addressed with respect to adequacy since typicality requires only "that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises

---

17 *See Azor-El v. City of New York*, No. 20-cv-3650, 2024 WL 4326921, at *8, 16-17 (S.D.N.Y. Sept. 27, 2024) (concluding that the questions of whether (i) denial of outdoor recreational time was unlawful, (ii) thin mattresses were unlawful, (iii) water was contaminated and caused injuries, and (iv) defendants were aware of and deliberately indifferent to such conditions are common questions).

18 *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

19 *Robidoux*, 987 F.2d at 936-37.

20 *Id.*

from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[21] Here, as described above, plaintiffs allege that they suffered substantially the same conditions of confinement and incurred substantially the same injuries from those conditions as did other PICs in the EMTC during the Relevant Period. The typicality requirement thus is satisfied.

*IV. Adequacy*

Intervenors and defendants argue that plaintiffs would be inadequate class representatives for pretrial detainees and putative Subclass B members because none of them was detained pretrial during the Relevant Period or incarcerated for less than 120 consecutive days after the quarantine period. According to intervenors and defendants, all plaintiffs having been incarcerated for at least such a period, their interests would be fundamentally antagonistic to at least those of the putative members of proposed Subclass B. Intervenors and defendants are correct on all fronts.

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[22] Simply put, plaintiffs cannot represent adequately PICs incarcerated for less than 120 consecutive days after the quarantine period or pretrial detainees at all because plaintiffs were not part of either group.[23] Plaintiffs now attempt to cure that defect by

---

21 *Elisa W.*, 82 F.4th at 128 (quoting *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022)).

22 *Amchem*, 521 U.S. at 626 (quoting *Falcon*, 457 U.S. at 157 n.13).

23 *Nat'l Super Spuds, Inc. v. NYME*, 660 F.2d 9, 17 (2d Cir. 1981) (Friendly, J.) ("The named plaintiffs in a class action 'cannot represent a class of whom they are not a part . . . .'") (quoting *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962) (per curiam)).

moving to amend the complaint to add 231 additional named plaintiffs, some of whom supposedly were detained pretrial at the EMTC for at least 120 consecutive days after quarantining during the Relevant Period and some of whom supposedly were detained or incarcerated for shorter periods. Permitting such an amendment, however, would open a can of worms. Plaintiffs have made no showing that any – let alone each – of those proposed 231 additional named plaintiffs would have claims typical of the members of the putative classes or that they would be adequate representatives of the putative classes. Yet such is their burden to shoulder before certification could be proper.[24]

In any event, plaintiffs' motion to amend would fail to cure the fundamental conflict that exists within putative Class 1 between proposed Subclasses A and B. Plaintiffs cannot adequately represent both PICs who were incarcerated for at least 120 consecutive days after quarantining (putative Subclass A) and those who were incarcerated for less than 120 consecutive days (putative Subclass B). Doing so would pit those putative subclasses against one another because membership in them would be mutually exclusive and claims of longer deprivations necessarily would be more valuable – especially considering that plaintiffs suggest determining damages on a "per diem basis."[25] This dynamic would produce "'disparate interests' within the

---

To be sure, plaintiffs argue that Lewis was a pretrial detainee at the EMTC before he served his sentence of incarceration there, but that was before the Relevant Period, and he thus still falls outside the proposed classes plaintiffs seek to certify.

24 *See also McBean v. City of New York*, 228 F.R.D. 487, 498 & n.5 (S.D.N.Y. 2005) (Lynch, J.) (finding adequacy satisfied where there were at least four named plaintiffs who were members of the putative class and thus could be appointed as class representatives regardless of whether all the then-named plaintiffs ultimately were determined to be class members).

25 Pls.' Mem. Law (Dkt 25) at 22.

class," thus precluding certification.[26] Moreover, permitting plaintiffs to represent PICs detained for less than 120 consecutive days would be inconsistent with their stated theory of the case – that "120 days would be the bright[]line for how many days a class member needed to suffer the unlawful conditions to have a constitutional claim."[27] They now seek to rewrite the record and recharacterize their stance not as a "constitutional bright line," but as "a class-management definition chosen because the uniform evidence and the severity-and-duration analysis make this group especially cohesive."[28] In taking this new stance, however, plaintiffs implicitly admit – at least in their view of the law and evidence – that a class of PICs subjected to shorter periods of confinement would be insufficiently cohesive to warrant adjudication by representation.

Intervenors argue also that plaintiffs' counsel lack the competency to be appointed class counsel more generally. They claim that plaintiffs' counsel would be inadequate due to their failure to submit expert evidence and depose certain witnesses before moving for class certification and their lack of experience in class actions and resources to see this case through trial and potential appeals. These objections for the most part boil down to intervenors' disagreement with strategic decisions made by plaintiffs' counsel, not counsel's qualifications. Although intervenors' objections could be proven correct as the case unfolds, the Court finds that such objections do not warrant

---

26 *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 251 (2d Cir. 2011) (describing fundamental conflicts precluding class certification in *Amchem* and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).

27 *E.g.*, Pls.' Mem. Law (Dkt 25) at 18-19.

28 *E.g.*, Pls.' Mem. Law Mot. Amend (Dkt 87) at 1.

precluding plaintiffs' counsel from being appointed class counsel at this stage.[29] Plaintiffs' counsel has performed considerable work in identifying and recruiting putative class members, is experienced in handling prisoner rights cases (albeit not class actions), and has represented that it will continue to commit the resources necessary to litigate this case. The Court, at least at this stage, finds plaintiff's counsel competent to represent any putative classes ultimately certified.

* * *

In sum, plaintiffs have proven by a preponderance of the evidence that the proposed classes satisfy the first three requirements of Rule 23(a). But they have failed to demonstrate that plaintiffs (currently or as amended) adequately would represent the interests of putative Subclass B or, in general, of pretrial detainees and PICs detained for less than 120 consecutive days. The Court therefore declines to certify the classes as proposed and considers now whether the remaining putative classes – Subclass A and Classes 2 and 3, all modified to exclude pretrial detainees and PICs detained for less than 120 consecutive days – warrant certification under Rule 23(b)(3).

## *V. Predominance*

As modified, the proposed classes each are limited to convicted persons who were detained at one facility for at least 120 consecutive days after a quarantine period during approximately a year-and-a-half span and were subjected to denial of outdoor recreational time, thin mattresses, contaminated water, or some combination of these conditions. For each of the putative

---

29

*See Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 214 (D.D.C. 2015) ("[C]lass representatives do not become inadequate merely because other class members disagree with their strategic decisions."); *cf. Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (stating with respect to the right to intervene that "[a] mere disagreement over litigation strategy . . . does not, in and of itself, establish inadequacy of representation").

classes, the material factual and legal questions that would be subject to generalized proof thus are whether the condition of confinement at issue (i) existed, (ii) if so, was *per se* unconstitutional, and, (iii) if not, in which circumstances, if any, was unconstitutional. While those circumstances might vary among individual class members based, for example, on their ability to exercise indoors, their medical needs, or the extent to which they were exposed to the allegedly contaminated water, and thus necessitate some level of individualized proof, predominance is not negated by having to try separately certain "important matters . . . , such as damages or some affirmative defenses peculiar to some individual class members."[30] After all, resolution of common questions pertaining to liability can be "more substantial than the issues subject only to individualized proof."[31] Indeed, that often is the case where, as here, "plaintiffs are 'allegedly aggrieved by a single policy of defendants' . . . since many nearly identical litigations can be adjudicated in unison."[32] Furthermore, it is not for the Court now to decide "whether the evidence in fact establishes that plaintiffs would win at trial."[33] Its task instead is limited to determining whether common questions exist and predominate. Because the proposed classes (again, as modified) "are sufficiently cohesive to warrant adjudication by representation,"[34] the predominance requirement is satisfied.

---

30 *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-53; (quoting 7AA Wright & Miller's Federal Practice & Procedure § 1778 (3d ed. 2005)); *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014).

31 *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

32 *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006).

33 *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666-67 (9th Cir. 2022).

34 *Amchem*, 521 U.S. at 623.

*IV. Superiority*

Finally, intervenors and defendants argue that the proposed classes nonetheless would be unmanageable because plaintiffs' proposed class definitions "speak to the number of days the detainees were confined" rather than "the number of days they were denied exercise during confinement."[35] In their view, that makes the proposed classes unascertainable. Yet, as plaintiffs correctly argue, "[b]ecause outdoor recreation was categorically unavailable to every PIC throughout the [Relevant Period], the number of days a [putative] class member was confined at [the] EMTC *is* the number of days that [putative] class member was denied outdoor recreation."[36] The proposed classes therefore are ascertainable. And, as modified, putative members of the proposed classes would share an interest in pursuing this action as a class action because doing so would allow them to bring claims that they likely could not or would not bring on their own otherwise.[37] The class action mechanism both would "streamlin[e] the litigation process" and "ensure that putative class members were aware of and able to vindicate their constitutional rights."[38] Moreover, a class action would allow the putative class members to pursue litigation in a forum that presumably would be convenient for them and defendants alike. And, as modified, the putative class claims no longer

---

35 *E.g.*, Intervenors' Opp'n (Dkt 70) at 3.

36 Pls.' Reply Intervenors' Opp'n (Dkt 91) at 8.

37 *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (Rule 23(b)(3) class actions "can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery."); *see Azor-El*, 2024 WL 4326921, at *16 (describing the difficulties formerly or currently incarcerated individuals might have in litigating "these important yet labor-intensive claims individually due to limited resources and a lack of familiarity with the legal system") (internal quotation marks omitted).

38 *Azor-El*, 2024 WL 4326921, at *16 (cleaned up).

would overlap with those of intervenors, who still have their own case – filed before this case – pending in this district. The superiority requirement thus is satisfied for the modified putative classes.

## *Conclusion*

For the foregoing reasons, plaintiffs' motion for class certification and appointment of class counsel (Dkt 23) is granted insofar as the below classes are certified with plaintiffs hereby appointed to be the named representatives of those classes and plaintiffs' counsel of record hereby appointed to serve as counsel for those classes. Plaintiffs' motion otherwise is denied. In light of the Court's amendments to the class definitions, plaintiff's motion for leave to file a first amended complaint and to amend the caption (Dkt 86) is denied as moot.

> Class 1: All convicted persons housed at the Eric M. Taylor Center on Rikers Island (the "EMTC") from October 26, 2022 to June 18, 2024 (the "Relevant Period"), who were detained for at least 120 consecutive days after the initial fourteen days of quarantine and denied the opportunity for outdoor recreational time.
>
> Class 2: All convicted persons housed at the EMTC during the Relevant Period for at least 120 consecutive days who were provided with a thin, unpadded mattress placed on a metal foundation.
>
> Class 3: All convicted persons housed at the EMTC during the Relevant Period for at least 120 consecutive days who were exposed to contaminated water.

SO ORDERED.

Dated: September 30, 2026

Lewis A. Kaplan
United States District Judge